1

2

3

4

5

6

7        **IN THE UNITED STATES DISTRICT COURT FOR THE**

8            **EASTERN DISTRICT OF CALIFORNIA**

9

10   **KATHRYN DEVRIES,**                    )     **CV F 04-5449  AWI LJO**
                                            )
11           **Plaintiff,**                 )
                                            )     **MEMORANDUM OPINION**
12   **v.**                                 )     **AND ORDER GRANTING IN**
                                            )     **PART DEFENDANTS'**
13   **CLEAR CHANNEL BROADCASTING,**         )     **MOTION TO DISMISS THE**
     **INC.; THE ACKERLEY GROUP, INC.;**     )     **THIRD AMENDED**
14   **ACKERLEY MEDIA GROUP, INC.;**         )     **COMPLAINT PURSUANT TO**
     **CLEAR CHANNEL**                       )     **FED. R. CIV. PROC. 12(b)(6)**
15   **COMMUNICATIONS, INC.; CCMM**          )     **AND ORDERING CASE**
     **SUB, INC.; and KGET TV, INC.,**       )     **CLOSED**
16                                           )
             **Defendants.**                 )     [Doc. # 49]
17   _____ )

18

19        This is an action for damages arising from the alleged wrongful termination of plaintiff

20   Kathryn Devries ("Plaintiff"), who brings the action in pro per against defendants Clear Channel

21   Broadcasting, Inc.; The Ackerley Group, Inc.; Ackerley Media Group. Inc.; Clear Channel

22   Communications, Inc.; CCMM Sub, Inc.; and KGET TV, Inc. ("Defendants").  Following

23   dismissal of the single federal claim contained in the Second Amended Complaint, Plaintiff filed

24   a Third Amended Complaint.  In her Third Amended Complaint, Plaintiff alleges a total of nine

25   claims for relief on both federal and state law grounds and requests compensatory and punitive

26   damages.  In the instant motion, Defendants move to dismiss the Third Amended Complaint.

27   Federal question jurisdiction exists pursuant to 28 U.S.C., section 1331.  Venue is proper in this

28   court.

1

2
## PROCEDURAL HISTORY

3      This case was removed to this court from Kern County Superior Court on March 18,

4  2004.  The Second Amended Complaint ("SAC"), was filed on October 6, 2004.  On January 26,

5  2005, the court granted in part Defendants' motion to dismiss the SAC by dismissing the sole

6  federal claim contained in the SAC.  Leave was granted for Plaintiff to file a third amended

7  complaint.  The Third Amended Complaint ("TAC") was filed on March 1, 2005.  The instant

8  motion to dismiss the TAC was filed on March 9, 2005.  Plaintiff's opposition was filed on

9  March 28, 2005, and Defendants' reply was filed on April 4, 2005.  The hearing date of April 11,

10  2005, was vacated by order of the court on April 8, 2005, and the matter was taken under

11  submission as of that date.

12
## FACTS/FACTUAL ALLEGATIONS

13      The general background factual information alleged in the TAC is substantially identical

14  to the information alleged in the SAC.  That background information previously alleged by

15  Plaintiff in the SAC was summarized by the court as follows in its Memorandum Opinion and

16  Order Granting Defendant's Motion to Dismiss filed January 26, 2005:

17          On October 5, 2001, the Ackerley Group, Inc. merged with Clear Channel
        Communications, Inc. ("Clear Channel") and CCMM Sub, Inc.  Clear Channel
18      took over management of the television station (KGET TV), and on June 18,
        2002, distributed a collection of documents referred to as the Employee Packet.
19      One of the document contained in the Employee Packet was the Arbitration
        Agreement.  Clear Channel required that employees sign and return the documents
20      contained in the Employee Packet by June 20, 2002.  Plaintiff signed and returned
        all of the documents in the Employee Packet by the June 20 deadline except that
21      she did not sign and return the Arbitration Agreement.  Plaintiff also did not sign
        and return a document titled Employee Guide, which contained a complete copy
22      of the Arbitration Agreement.  Plaintiff alleges it was her intention to seek legal
        advice as to the legal validity of the Arbitration Agreement.
23      Plaintiff alleges Clear Channel began demanding the return of the signed copy of the
   Arbitration Agreement on Monday, June 24, 2002, and continued to demand the return of the
24  document daily.  On Friday, June 28, 2002, Plaintiff stated her concerns to the KGET TV's
   general manager.  Plaintiff's stated concerns included the scope of the "Covered Claims" in the
25  Arbitration Agreement which included claims of battery, infliction of emotional distress and
   claims of sexual and age-based harassment, among others.  Plaintiff requested waivers or
26  permission to opt out of several clauses in the Arbitration Agreement.  Plaintiff also requested
   written waiver of a provision of the Employee Guide which prohibited an employee from

27

28                                             2

1   accepting part-time or additional employment outside their normal working hours in the
2   broadcasting industry.  Plaintiff alleges "similar permission had already been granted to a fellow
    male employee that worked in [P]laintiff's commercial production department."  SAC at 5.
3                       Plaintiff alleges she was "involuntarily terminated" three days later, on
    July 1, 2002.  Plaintiff alleges that she was not granted any severance benefits and
    that she was the only female in her department, that she was senior to other
4   employees in the department, and was over forty (40) years of age.

5        The TAC differs from the SAC in that it places all the federal claims first and adds an

6   additional three claims for relief for a total of nine claims.  The first claim for relief is the same

7   as the previous sixth claim for relief under the SAC; that is, it is a claim that the arbitration

8   agreement was unlawfully imposed because the Federal Arbitration Act does not apply to

9   broadcast radio and television employees.  The second claim for relief is for "wrongful

10  termination on the basis of age in violation of the federal Age Discrimination in Employment Act

11  ("ADEA") as modified by the 1990 Older Workers Benefit Protection Act ("OWBPA").

12  Plaintiff's third claim for relief is for wrongful termination in violation of public policy as set

13  forth in the Civil Rights act of 1991 and the ADEA.  The fourth claim for relief is for wrongful

14  termination under the Federal Civil Rights Act of 1991 based on sex discrimination.  The fifth

15  and sixth claims for relief are claims under the California Fair Employment and Housing Act

16  ("FEHA") alleging age and sex discrimination, respectively.  Plaintiff's seventh claim for relief

17  is for wrongful termination in violation of California Public Policy.  The eighth and ninth claims

18  for relief are California common law claims for breach of contract and breach of covenant of

19  good faith and fair dealing, respectively.

20                                **LEGAL STANDARD**

21       In considering a motion to dismiss pursuant to Rule[1]  12(b)(6) of the Federal Rules of

22  Civil Procedure, the court must accept as true the allegations of the complaint in question,

23  Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in

24  the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's

25

26
           [1]      All references to Rules hereafter are to the Federal Rules of Civil Procedure
27  unless otherwise stated.

28                                      3

1   favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).   A motion

2   to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that

3   plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  See

4   Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46

5   (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir.

6   1981).  As the Supreme Court has noted, when evaluating a complaint for failure to state a claim,

7   the question is not whether the facts stated in the complaint, if proven, would entitle the plaintiff

8   to any relief.  Instead, the question is whether there is any set of "facts that could be proved

9   consistent with the allegations of the complaint" that would entitle plaintiff to some relief.

10   Hishon, 467 U.S. at 73.   "[U]nder Rule 12(b)(6) the defendant has the burden of showing no

11   claim has been stated."  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991).

12      Although a court ordinarily considers only the pleadings themselves when ruling on a

13   motion to dismiss for failure to state a claim, the court may consider facts outside the pleadings

14   of which judicial notice may be taken.  See Heliotrope Gen. Inc., v. Ford Motor Co., 189 F.3d

15   971, 981 n. 18 (9th Cir. 1999).

**DISCUSSION**

16

17   **I.  Exclusion by the Federal Arbitration Act**

18      As Defendants point out, it is difficult to discern how Plaintiff's first claim for relief

19   states a claim for which relief can be granted.  Applying the broadest possible reading to

20   Plaintiff's first claim for relief, the court surmises Plaintiff's first claim requests declaratory

21   judgment that her position as an employee of Defendant's telecommunications company is

22   exempt from the provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C., section 1, et seq.

23   The FAA provides that "a written provision in 'a contract evidencing a transaction involving

24   commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be

25   valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

26   revocation of any contract.'  9 U.S.C. § 2."  Equal Employment Opportunity Commission v.

27

28                                              4

1    Waffle House, Inc., 534 U.S. 279, 289 (2002).  The FAA was enacted by congress in 1964 "'to

2    reverse the longstanding judicial hostility to arbitration agreements that had existed at English

3    common law and had been adopted by American courts, and to place arbitration agreements upon

4    the same footing as other contracts.'  Citation."  Id.  The Supreme Court has consistently held the

5    FAA manifests a "'liberal federal policy favoring arbitration agreements.'  Citations."  Id.  The

6    court surmises Plaintiff's first claim for relief asks the court to declare the FAA does not apply to

7    her and that the arbitration agreement is therefore unenforceable and unlawfully imposed.

8            Section 1 of the FAA provides for a limited exception to the general purpose of the FAA

9    to place arbitration agreements on the same legal footing as other contracts.  Section 1 of the

10   FAA provides, in pertinent part, that "nothing herein contained shall apply to contracts of

11   employment of seamen, railroad employees, or any other class of workers engaged in foreign or

12   interstate commerce."  9 U.S.C. § 1.  Plaintiff contends that she is excluded by this provision

13   from the generally inclusive terms of the FAA because she, as a telecommunications worker, is a

14   worker engaged in foreign or interstate commerce withing the exclusionary language of section 1.

15   Plaintiff is incorrect.

16           Prior to 2001, the Ninth Circuit had held that the exclusionary clause of the FAA is to be

17   read to expansively so as to essentially exclude all arbitration agreements in employment

18   contracts.  See Craft v. Campbell Soup Co., 177 F.3d 1083 (9th Cir. 1999).  The decision in Craft

19   was contrary to the holding of every other circuit court that had addressed the issue.  See Circuit

20   City Stores, Inc. v. Adams, 532 U.S. 105, 110-111 (2001) (listing contrary decisions from other

21   circuits).  Applying the maxim of *ejusdem generis*, the Circuit City Court construed the "worker

22   engaged in foreign or interstate commerce" as a residual clause giving effect to the terms

23   "seamen" and "railroad employees."  Id. at 114-115.  From this parsimonious reading of section

24   1 of the FAA, the Circuit City Court held the exclusionary language of section 1 applies only to

25   transportation workers and does not apply to the great majority of workers who are generally

26   employed in areas that are engaged in interstate commerce but are not directly involved in

27

28                                                  5

1  transportation. Id. at 121.

2      Plaintiff contends that her employment with Defendants was in the nature of work

3  engaged in foreign or interstate commerce. Assuming, *arguendo*, Plaintiff was involved in the

4  production of material that was placed into the broadcast medium and assuming, *arguendo*, that

5  the material she produced crossed state lines, the fact remains Plaintiff was not one of those

6  workers "'actually engaged in the movement of goods in interstate commerce'" as contemplated

7  in Circuit City. Id. at 112. Rather, Plaintiff was a worker who, like most, had a part in the

8  production of a product or products that might eventually cross state lines in the same way any

9  manufactured commodity might. Since Circuit City, courts are constrained to apply the

10  exclusionary language of Section 1 of the FAA very narrowly so as to exclude only those

11  involved in the physical transportation of goods in interstate or foreign commerce. This court

12  declines to stretch that interpretation to include Plaintiff. Plaintiff's contention that she was

13  excluded from the provisions of the FAA by operation of the exclusion language of section 1 of

14  that act is without merit. Consequently, Plaintiff's first cause of action will be dismissed because

15  it fails to state a claim upon which relief may be granted.

16  **II.  Age Discrimination**

17      Plaintiff's second and third claims for relief are for age discrimination under federal law.

18  Plaintiff's second claim for relief is pursuant to the Older Workers Benefit Protection Act

19  ("OWBPA"). The third claim for relief is pursuant to the ADEA. Since the OWBPA is an

20  amendment to, and therefore a part of the ADEA, and since Plaintiff has alleged essentially

21  identical facts and theories to support both claims, the claims will be considered as one.

22      Defendants allege Plaintiff's claims for age discrimination are precluded because Plaintiff

23  did not allege age discrimination in her complaint filed with the California Department of Fair

24  Labor and Housing ("DFEH"). In support of their contention, Defendants submitted a copy of a

25  DFEH form titled "Complaint of Discrimination" (the "form"), which was signed by Plaintiff

26  and dated July 1, 2003, and which list sex as the only basis of discrimination. Apparently in

27

28                                              6

1  response to Defendants' allegation of non-exhaustion of administrative remedies, Plaintiff

2  included in her opposition brief a photocopy that purports to be a DFEH form identical to the one

3  dated July 1, 2003, except that the "amended" form is dated March 25, 2005, and adds the words

4  "and age (46)" to the allegation of discriminatory conduct.

5      The court agrees with Defendants that the "amended" form is suspect.  However, in her

6  reply brief, Plaintiff contends the "amended" form was issued by DFEH upon Plaintiff's request

7  in order to more accurately reflect the scope of issues investigated by DFEH.  In short, Plaintiff

8  asserts she complained to DFEH that she had suffered discrimination on the basis of both age and

9  sex but that the omission of the category of age from the prior DFEH form was mere oversight.

10     Because the court must accept as true Plaintiff's allegations and must construe all facts in

11  Plaintiff's favor, the court will assume the truth of Plaintiff's representation that she did in fact

12  complain to DFEH that she suffered both age and sex-based discrimination.  The court will

13  assume further that, pursuant to the worksharing agreement between EEOC and DFEH,

14  Plaintiff's complaint to DFEH was forwarded to EEOC and constitutes notice of complaint to

15  EEOC in compliance with the requirements of section 626(b).  See Downs v. Dep't Water &

16  Power, 58 Cal.App.4th 1093, 1097(2nd Dist. 1998) (discussing the worksharing agreement and

17  mutual notification); Burdette v. MEPCO/Electra, Inc., 673 F.Supp 1012, 1015 (N.D. Cal. 1987)

18  (discussing the mandatory nature of EEOC complaint as predicate to filing of ADEA claim).

19     Even assuming Plaintiff did comply with all state and federal requirements prior to filing

20  her ADEA claim, her claim as set forth in the TAC does not allege a set of facts that could

21  conceivably entitle Plaintiff to relief.  In its order of January 26, 2005, this court dismissed

22  Plaintiff's age discrimination claim in Plaintiff's SAC because she failed to allege facts that, if

23  true, could show she would not have been treated adversely by her employer "but for" the

24  employer's motive to discriminate against her because of her age.  See Baron v. City of Highland

25  Park, 195 F.3d 333, 338 (7th Cir. 1999) (discussing the McDonnell Douglas factors).  Apparently

26  in response to the court's prior ruling of January 26, 2005, Plaintiff has shifted the focus of her

27

28                                                  7

1  age discrimination claim in the TAC such that she now alleges Defendants failed to follow the

2  procedures mandated by the OWBPA in securing Plaintiff's "waiver" of rights in the arbitration

3  agreement.

4       Plaintiff correctly contends the OWBPA imposes a number of requirements that are

5  aimed at safeguarding older worker rights when waivers of liability are sought by employers,

6  including the right to a 21-day period within which the agreement can be reconsidered.  29

7  U.S.C. § 626(f); Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-427, 429 (1998).  The core

8  of Plaintiff's claim for age-based discrimination is that, in being required to sign the arbitration

9  agreement, she was required to waive her rights under the ADEA and was denied her right under

10 the OWBPA to a 21-day period in which she could change her mind.

11      While Plaintiff's contentions with respect to the safeguards afforded by the OWBPA are

12 correct, she presents no authority at all for the proposition that an agreement to participate in

13 arbitration if an age discrimination claim were to arise constitutes a "waiver" of rights under

14 ADEA as that term is used in the OWBPA.  The "waiver" the OWBPA refers to is a waiver of

15 substantive rights under the ADEA, such as the type normally encountered in settlement

16 agreements wherein the employee surrenders the right to bring an age-related ADEA claim

17 against the employer as part of the settlement agreement.  See, e.g., Id.; Flick v. Bank of

18 America, 197 F.Supp.2d 1229, 1232 (D. Nev. 2002).  Here, Plaintiff was not being asked to

19 surrender substantive rights under OWBPA, only to submit claims of age-discrimination to

20 arbitration.  Plaintiff fails to support the implied contention that the an arbitration agreement

21 constitutes a "waiver" of rights under ADEA within the meaning of OWBPA.  On substantive

22 grounds, Plaintiff has failed to state a claim for age-based discrimination upon which any relief

23 can be granted.  Dismissal of the claims is therefore required.

24 **III.  Sex-Based Discrimination**

25      Plaintiff has recast her California state FEHA sex-discrimination claim as a claim for sex

26 discrimination under the federal Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(a) (prohibiting

27

28                                                      8

1  discrimination against any individual because of such individual's sex).  Plaintiff's claim is

2  somewhat convoluted.  Essentially, she claims she was fired in retaliation for requesting a waiver

3  of the provision in the work agreement prohibiting moonlighting and replaced by a male worker.

4  She alleges a waiver similar to the one she requested was granted to a different male employee

5  who continued to work for the company for six months after Plaintiff was fired.  Plaintiff also

6  repeats some of the allegations that pertain to her complaints regarding age-based discrimination

7  and facts related to he state law contract claims.

8       The factual allegations Plaintiff sets forth in her claim do not describe sexual

9  discrimination, they describe retaliation, if anything.  Plaintiff alleges she was fired because she

10  took an action, either requesting waiver or refusing to sign the arbitration agreement, and that

11  action lead to her termination.  Plaintiff does not allege she was terminated because she was a

12  woman; she alleges only that the one other person who also requested a waiver of the no-

13  moonlighting provision and was granted the waiver was a man and that the person who replaced

14  her was a man.  Plaintiff uses the word "retaliation" to describe what happened to her and the

15  court finds that description more appropriate.

16       Retaliation in the workplace is prohibited by 42 U.S.C. § 2000e-3(a).  To make a prima

17  facie case of retaliation under this statute, Plaintiff must show: "(1) she engaged in statutorily

18  protected activity; (2) an adverse employment action was taken against her; and (3) a causal

19  connection between the two events."  LaCroix v. Sears Roebuck & Co., 240 F.3d 688, 691 (8th

20  Cir. 2001).  Plaintiff's retaliation claim fails upon consideration of the first element; plaintiff

21  does not allege she was engaged in statutorily protected activity.  Plaintiff presents no authority

22  for the proposition that either seeking a waiver from a no-moonlighting provision, or refusing to

23  sign an arbitration agreement are protected by statute.  Nor can the court find any such authority.

24  Indeed, as previously discussed, the statutory scheme embodied in the FAA indicates strongly

25  that arbitration agreements are favored.  It logically follows that refusal to sign such an

26  agreement would not be protected by statue.  To the extent Plaintiff suggests that some of the

27

28                                                    9

1  provisions of the arbitration agreement unlawfully excluded employee actions from litigation, the

2  proper path would be to sign the agreement and challenge the particular application of the

3  agreement when the issue arises.

4        To the extent it would be possible to construe Plaintiff's sex-discrimination claim as

5  discrimination or disparate treatment, her claim still must fail.  To establish a prima facie case for

6  sex discrimination a plaintiff must: (1) be a member of a protected class; (2) be qualified to

7  perform her job; (3) have suffered an adverse employment action; and (4) have been treated

8  differently that similarly situated persons of the opposite sex.  Id. at 693; Bodette v. Coxcom,

9  Inc., 366 F.3d 736, 742 (9th Cir. 2004).  Individuals are similarly situated when they have similar

10 jobs and display similar conduct.  Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th

11 Cir. 2004).  Plaintiff alleges she suffered disparate treatment because another person who worked

12 in the same department was granted a waiver and she was not.  Plaintiff does not allege facts

13 sufficient to establish that the male worker who was granted the waiver was similarly situated.

14 There is no allegation the other worker worked at the same job level on in the same job category

15 as Plaintiff, or that he requested waivers to moonlight in the same outside companies as Plaintiff,

16 or that he requested to moonlight a similar number of hours as Plaintiff had requested.

17        By definition, the granting of a waiver from an employment requirement is not an

18 entitlement, and is granted only upon consideration of the individual circumstance.  The grant of

19 a waiver to one person and the denial to another can be based on a myriad of reasons.  Plaintiff

20 has presented no evidence or allegation which, if true, would lead to the conclusion or inference

21 that the reason she was denied the waiver was because of discriminatory intent on the part of

22 Defendants.  The mere fact that the one person Plaintiff can point to that was granted a waiver of

23 the no-moonlighting provision was a male is insufficient to state a claim for sex discrimination

24 on a theory of disparate treatment.

25        The court concludes that even giving the most generous interpretation possible to

26 Plaintiffs scattergun approach to pleading, there is no theory under which it can fairly be

27

28                                                    10

1    concluded she has set forth facts sufficient to state a prima facie case of sex-based

2    discrimination.  Plaintiff's fourth claim for relief will therefore be dismissed.

3    **V.  Jurisdictional Considerations**

4           As this court noted in its decision of January 26, 2005:

5           A district court has the duty to establish subject matter jurisdiction over a
     removed action *sua sponte*, whether the parties raise the issue or not.  United

6    Investors Life Ins. Co. v. Waddell & Reed, Inc., 360 F.3d 960, 967 (9th Cir.
     2004).

7           In 28 U.S.C., section 1367(a), the United States Code provides that district
     courts "shall have supplemental jurisdiction over all other claims that are so

8    related to claims in the action within [the court's] original jurisdiction that they
     form part of the same case or controversy under Article III of the United States

9    Constitution."  Subdivision (c) of this statute provides in pertinent part:

10          The district courts may decline to exercise supplemental jurisdiction over a
     claim under subsection (a) if –

11

12          (1) the claim raises a novel or complex issue of state law,
            (2) the claim substantially predominates over claim or claims over
            which the district court has original jurisdiction,

13          (3) the district court has dismissed all claims over which it has
            original jurisdiction

14

15          Despite Plaintiff's attempt to re-engineer her complaint so as to put meat on the bones of

16   her federal claims for relief, the court remains convinced that state law contract  claims

17   predominate in this case.  Having determined that Plaintiff's four federal claims must be

18   dismissed, the court declines to exercise supplemental jurisdiction over the remaining state

19   claims.  The case will be remanded to the State court from which it was removed.

20

21

22

23

24

25

26

27

28                                                    11

1   THEREFORE, in consideration of the foregoing discussion, it is HEREBY ORDERED

2   that Defendants' motion to dismiss is GRANTED as to Plaintiff's first, second, third , and fourth

3   claims for relief as set forth in the Third Amended Complaint.  The case is HEREBY

4   REMANDED to the Superior Court of the County of Kern.  The Clerk of the Court shall

5   administratively CLOSE THE CASE.

6   IT IS SO ORDERED.

7   **Dated:    May 3, 2005**                                    **/s/ Anthony W. Ishii**

8   h2ehf                                          UNITED STATES DISTRICT JUDGE